**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SCRIPT SECURITY SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM INC., ET AL.<br><br>Defendant. | NO. 2:15-CV-1030-JRG-RSP<br><br>**LEAD CASE**<br><br>JURY TRIAL DEMANDED |

**<u>SCRIPT'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS</u>[1]**

---

[1] In view of their substantial overlap, Script files this single opposition to the motions to dismiss of Amazon (2:15-cv-1030, Dkt. No. 11); Best Buy (2:15-cv-1031, Dkt. No. 11); Time Warner (2:15-cv-1033, Dkt. No. 11); and Verizon (2:15-cv-1034, Dkt. No. 18).

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I. SCRIPT SUFFICIENTLY PLEADED WILLFUL INFRINGEMENT ........................ 1

    A. Script Has Plausibly Pleaded Post-Filing Willfulness ........................................... 1

    B. Script Has Plausibly Pleaded Pre-Filing And Post-Filing Willfulness Based On Defendants' Willful Blindness .............................................................. 2

II. SCRIPT SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT ......................... 5

III. VENUE IS PROPER ................................................................................................. 8

IV. SCRIPT SHOULD NOT BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT .............................................................................................................. 12

V. NO DISMISSAL SHOULD BE WITH PREJUDICE ..................................................... 12

VI. CONCLUSION ............................................................................................................ 13

## TABLE OF AUTHORITIES

Page

**Cases**

*Achates Reference Pub., Inc. v. Symantec Corp.*, No. 2:11-cv-294-JRG-RSP, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013) .................................................................................4, 5

*Brunette Mach. Works, Ltd. v. Kockum Indus.*, 406 U.S. 706 (1972)................................11, 12

*Devicor Med. Products, Inc. v. Biopy Scis.*, LLC, No. 10-cv-1060, 2013 WL 486638 (D. Del. Feb. 7, 2013) .............................................................................................................11

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (1981) .......................................................12

*Dynamic Hosting Company LLC v. Kyocera Communications, Inc.*, No. 2:14-cv-1148, Dkt. 24 (E.D. Tex. Aug. 24, 2015) ................................................................................ *passim*

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (U.S. 2011).....................................2

*i4i Limited Partnership v. Microsoft Corp.,* 670 F.Supp.2d 568 (E.D. Tex. 2009).......................7

*InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-cv-414, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012) ................................................................................................2, 6

*InMotion Imagery Techs. v. Imation Corp.,* No. 2:12-cv-298, 2013 WL 1279055 (E.D. Tex. March 26, 2013).................................................................................................5

*Merck & Co. v. Danbury Pharmacal, Inc*., 873 F.2d 1418 (Fed. Cir. 1989)...............................1

*MLP Tech., Inc. v. LifeMed ID, Inc.,* No. 5:13-cv-909, 2013 WL 6243943 (N.D. Ohio Dec. 3, 2013).........................................................................................................................10

*MONEC Holding AG v. Motorola Mobility, Inc.,* 897 F. Supp.2d 225 (D. Del. 2012)................4

*Oasis Research, LLC v. Adrive, LLC*, No. 4:10-cv-435, 2011 U.S. Dist. LEXIS 80483 (E.D. Tex. May 23, 2011) ......................................................................................................2

*Potter v. Bexar County Hosp. Dist*., 195 Fed. App'x 205 (5th Cir. 2006) ................................12

*Ricoh Company, Ltd. v. Quanta Computer Inc*., 550 F.3d 1325 (Fed. Cir. 2008)........................7

*Swipe Innovations, LLC v. Ingenico Corp.,* No. 9:12-cv-127, Dkt. 37 (E.D. Tex. Jan. 3, 2013) ..................................................................................................................................5, 6

*TNR Indus. Doors, Inc. v. PerforMax Grp., LLC,* No. 13-13815, 2014 WL 2800750 (E.D. Mich. June 17, 2014) ........................................................................................................10

*Touchscreen Gestures, LLC v. Research in Motion Ltd.,* No. 6:12-cv-263, 2013 WL 8505349 (E.D. Tex. Mar. 27, 2013)..................................................................................4, 5

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.,* No. 6:12-cv-366, 2013 WL 8482270 (E.D. Tex. Mar. 6, 2013).................................................................................2, 6

*Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-06638, 2012 WL 1831543 (N.D. Cal. May 18, 2012) .................................................................................................4, 5

*VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574 (Fed. Cir. 1990) .......... *passim*

*WordCheck Tech, LLC v. Alt-N Techs., Ltd.,* No. 6:10-cv-457, Dkt. 755 (E.D. Tex. July 17, 2012) ............................................................................................................................2, 3

**Rules & Statutes**

Fed. R. Civ. P. 11(b)(3) ...............................................................................................................3
28 U.S.C. § 1391(c) ............................................................................................................ *passim*
28 U.S.C. § 1400(b) ........................................................................................................... *passim*

**Other Authorities**

Dennis Fernandez, Move Over Letterman: Top 10 Most Common IP Management Mistakes for New Companies, Pat. Strategy & Mgmt., July 1, 2003 .....................................3, 4
Edwin H. Taylor & Glenn E. Von Tersch, A Proposal to Shore Up the Foundations of Patent Law that the Underwater Line Eroded, 20 Hastings Comm. & Ent. L.J. 721 (1998)........3
H.R. Rep. No. 112-10 (2011) ................................................................................................8, 9
Mark A. Lemly & Ragesh K. Tangri, Ending Patent Law's Willfulness Game, 18 Berkeley Tech. L.J. 1085 (2003) ...............................................................................................4
Timothy B. Lee, It's Normal for Software Companies to Ignore Patents, Forbes Contributor post (2/27/2012) ........................................................................................................4
Tom Krazit, "Why Tech Companies Want Engineers To Ignore Patents When Designing Products," Gigaom, Nov. 2, 2011 ................................................................................4

I.      **SCRIPT SUFFICIENTLY PLEADED WILLFUL INFRINGEMENT**

   A.      **Script Has Plausibly Pleaded Post-Filing Willfulness**

The moving defendants argue that Script has not alleged facts that make a claim for post-filing willfulness plausible.

Script's complaints allege that defendants' infringement is ongoing.  And Script's complaints allege that defendants continue to infringe after receiving notice of Script's patents by the filing of the complaints.  Script has thus alleged that defendants are continuing to infringe with (1) full knowledge of Script's patents and (2) full knowledge of the allegations that its products infringe Script's patents.  That is enough to plausibly support Script's willful infringement allegation for defendants' continued infringement in the post-filing period.  *See, e.g., WordCheck Tech, LLC v. Alt-N Techs., Ltd.*, No. 6:10-cv-457, Dkt. 755, at 3 (E.D. Tex. July 17, 2012) (Davis, J.) (holding that an allegation of notice of the patents-in-suit and that continued infringement would be willful is sufficient at the pleading stage); *Dynamic Hosting Company LLC v. Kyocera Communications, Inc.*, No. 2:14-cv-1148, Dkt. 24, at 6-7 (E.D. Tex. Aug. 24, 2015) (Payne, Mag. Rep. and Rec.).

It is hard to understand what more defendants are demanding.  Defendants certainly do not say.  Obviously, Script is not able, and of course not at the pleading stage, to point to things like internal memoranda from defendants admitting that they are no-good patent infringers.  But as the Federal Circuit has recognized, that type of "smoking gun" evidence of intent is rarely available, and is not necessary to prevail on, let alone plead, a claim.  *See, e.g., Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989) ("Intend need not, and rarely can, be proven by direct evidence.").

Defendants rely primarily on *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366, 2013 WL 8482270, *5 (E.D. Tex. Mar. 6, 2013); *Oasis Research, LLC v. Adrive, LLC*, No. 4:10-cv-435, 2011 U.S. Dist. LEXIS 80483, at *14-15, (E.D. Tex. May 23, 2011); *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-cv-414, 2012 WL 3283371, at *4 (E.D. Tex. Aug. 10, 2012).  In each of those cases the Court held that a bare assertion of willful infringement was insufficient.  But none of these cases address whether allegations of ongoing infringement, with notice of both the patents and the allegations of patent infringement provided by the complaint, are sufficient to plausibly plead willful infringement in the post-filing period.

> **B.     Script Has Plausibly Pleaded Pre-Filing And Post-Filing Willfulness Based On Defendants' Willful Blindness**

Script has also adequately pleaded both pre-filing and post-filing willfulness based on defendants' willful blindness.  As the Supreme Court held in the context of induced infringement, the knowledge of a patent necessary to show specific intent can be established under the doctrine of willful blindness.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2069 (U.S. 2011).  Script has alleged that defendants have taken deliberate, affirmative steps to avoid learning of the patent rights of Script's patent rights.  That is enough, at the pleadings stage, to plausibly plead that defendants' infringement was willful.

Defendants respond by arguing that these factual allegations are too "conclusory" to plausibly plead willful infringement.  But Script's allegations are far from the mere parroting of the legal elements of a claim.  Script alleges that defendants have adopted policies and practices of affirmatively instructing their employees to avoid looking at the patent rights of others.  Those are specific, concrete facts that support Script's willful blindness theory.

Defendants also argue that because Script's allegations are made against all of the defendants that means that Script does not have a good faith basis for them.  As an initial matter,

2

whether Script has a good faith basis for its factual allegations is a very different question from whether the alleged facts plausibly plead willful infringement. Defendants' unfounded assertion that Script does not have a good faith basis for its allegations is thus immaterial to their motion. But, to be clear, Script does have a good faith basis for its factual allegations.

Script is allowed to make factual allegations on information and belief so long as there is a reasonable expectation that discovery will reveal supporting evidence. *See* Fed. R. Civ. P. 11(b)(3) (allowing allegations of fact on information and belief it they "will likely have evidentiary support after reasonable opportunity for further investigation or discovery"). Script did not just make up its allegation that defendants have policies and practices of purposefully remaining ignorant of the patent rights of others. That large corporations like defendants have such policies and practices is a notorious fact.

In his paper "Ignoring Patents," Professor Lemly, the Director of the Stanford Program in Law, Science, and Technology at the Stanford Law School, describes it best:

> [B]oth researchers and companies in component industries simply ignore patents. ***Virtually everyone does it.*** They do it at all stages of endeavor. Companies and lawyers tell engineers not to read patents in starting their research, lest their knowledge of the patent disadvantage the company by making it a willful infringer. . . . This ***intentional ignorance*** of patent rights in the hands of others has led some to label major manufacturers in the IT industries "patent pirates."

Ex. 1 at 21-22 [M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008)] (emphasis added). That corporations like defendants purposefully foster this "intentional ignorance" is widely recognized. *See, e.g.,* Edwin H. Taylor & Glenn E. Von Tersch, *A Proposal to Shore Up the Foundations of Patent Law that the Underwater Line Eroded*, 20 Hastings Comm. & Ent. L.J. 721, 737 (1998) ("As matters now stand many companies discourage employees from reading patents. This presumably lessens the chance that the company will be found to have knowledge of a patent."); Dennis Fernandez, *Move Over Letterman: Top 10 Most Common IP*

3

*Management Mistakes for New Companies*, Pat. Strategy & Mgmt., July 1, 2003, at 3 ("Additionally, in many cases it may be appropriate for companies, as a matter of policy, to discourage looking at issued patents owned by other entities so as to avoid awareness of potentially infringing patents."); Mark A. Lemly & Ragesh K. Tangri, *Ending Patent Law's Willfulness Game*, 18 Berkeley Tech. L.J. 1085, 1100-01 (2003) ("[I]n-house patent counsel and many outside lawyers regularly advise their clients not to read patents if there is any way to avoid it.  What you do know will certainly harm you, they reason, so it is generally better not to know.  Thus, from the perspective of a potential infringer, ignorance is bliss."); Timothy B. Lee, *It's Normal for Software Companies to Ignore Patents*, Forbes Contributor post (2/27/2012) ("[A]lmost all software companies ignore their competitor's patents."); Tom Krazit, "*Why Tech Companies Want Engineers To Ignore Patents When Designing Products,*" Gigaom, Nov. 2, 2011 ("[S]everal companies in the tech industry actively discourage their engineers from thinking about whether concepts and products under development might have already been patented . . . .").

Defendants rely on *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp.2d 225, 230 (D. Del. 2012), *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-06638, 2012 WL 1831543 (N.D. Cal. May 18, 2012), *Touchscreen Gestures LLC v. Research in Motion Ltd.*, No. 6:12-CV-263-MHS, 2013 WL 8505349 (E.D. Tex. Mar. 27, 2013), and *Achates Reference Pub., Inc. v. Symantec Corp.*, No. 2:11-CV-294-JRG-RSP, 2013 WL 693955, at *3 (E.D. Tex. Jan. 10, 2013).  But in those cases plaintiff did not allege that the defendants affirmatively took steps (such as instructing their employees to not look at the patents of others) to avoid learning of the patents of others.  In *MONEC*, the plaintiff actually alleged the opposite, saying that defendants were actively monitoring the patents of their competitors. *MONEC*, 897 F. Supp.2d at 234.  In

*Vasudevan*, the plaintiff alleged willful blindness based only on the fact that defendant "should have known" about the patents since they were participants in the same industry. *Vasudevan*, 2012 WL 1831543 at *5-6. In *Touchscreen*, the complaint was completely void of any allegations or facts pertaining to willful infringement. 2013 WL 8505349, at *3. In *Achates*, there was nothing more than a "bare assertion" that infringement was willful. 2013 WL 693955, at *3.

## II.  SCRIPT SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT

Defendants say that Script's indirect infringement allegations are not adequately pleaded because Script has not plausibly pleaded specific intent. But for the same reasons described above in connection with willful infringement, Script has pleaded sufficient facts that make plausible that defendants acted with the knowledge and intent necessary to indirectly infringe. *See, e.g.*, *InMotion Imagery Techs. v. Imation Corp.*, No. 2:12-cv-298, 2013 WL 1279055, at *5 (E.D. Tex. March 26, 2013) (upholding allegation "that the filing of this lawsuit provides notice of the asserted patents and provides a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement").

For inducement, defendants additionally argue that Script has failed to plead facts making it plausible that they caused others to infringe Script's patents. But in *Swipe Innovations, LLC v. Ingenico Corp.*, this Court denied a motion to dismiss allegations virtually the same as Script's allegations. No. 9:12-cv-127, Dkt. 37, at 4–6 (E.D. Tex. Jan. 3, 2013); *see also Dynamic Hosting Company LLC v. Kyocera Communications, Inc.*, No. 2:14-cv-1148, Dkt. 24, at 3-5 (E.D. Tex. Aug. 24, 2015). In *Swipe* and *Dynamic*, the Court held that acts showing inducement were adequately pleaded by alleging "advising and directing [of] customers [to infringe using accused instrumentalities]," "advertising or promoting the use [of accused instrumentalities to

5

infringe]," and "distributing instructions that guide users to use the [accused instrumentalities to infringe]. *Swipe* at 4-6; *Dynamic* at 4-5.

Defendants argue that the allegations as to the inducing acts or the identity of the contributed components resemble those found insufficiently detailed in other decisions by this Court, namely *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366, 2013 WL 8482270, at *3–4 (E.D. Tex. March 6, 2013) and *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-cv-414, 2012 WL 3283371, at *3–4 (E.D. Tex. Aug. 10, 2012) (dismissing contributory claims but upholding inducement claims). But the complaints in those cases lacked the detail of the ones here. For example, as to inducement, *Cirrus Logic* held that alleging supply of the accused instrumentalities and provision of instructions on how to use them cannot lead to an inference of inducement. *See Cirrus Logic*, 2013 WL 8482270, at *4. But the allegations here go beyond that, alleging "advising and directing," "advertising or promoting the use," and "distributing instructions" on ***how to infringe*** using the accused instrumentalities (and not just on how to use the accused instrumentalities ***in general***). Furthermore, *Brain Damage* suggests that simply asserting that the defendant "actively induced others to infringe" is enough. *Brain Damage*, 2012 WL 3283371, at *1 (showing inducement allegation); *id.* at *3 (denying dismissal of inducement). Similarly, as to contributory infringement, *Brain Damage* found a failure to "identify the components used in the infringing method." *Brain Damage*, 2012 WL 3283371, at *4. That complaint asserted no more than that the defendant "contributed to the infringement of one or more claims of the [] patent." *Id.* at *1 (showing contributory allegation). It made ***no attempt at all*** to identify the accused component, or to allege no substantial non-infringing uses.

Defendants additionally argue that Script has not adequately identified the components

6

that allegedly have no substantial non-infringing uses for contributory infringement. But Script has specifically pleaded that defendants products have special features that perform certain actions, and that those specific features infringe. For example, Script has pleaded that the accused systems have special features that allow them to send notifications to users remotely when an alarm that detects motion is triggered. Defendants say this is not enough because Script has not identified the specific components in their products that implement those special features. But because the accused special features are largely implemented in software and/or firmware, there is no practical way for Script to identify them other than identifying the feature. To demand that Script identify the specific source code that corresponds to such features at the pleading stage would be to demand the impossible. *See Dynamic* at 5-6.

Some defendants also say that Script has not plausibly pleaded contributory infringement because the accused products have many features beyond the special features identified by Script's complaints. But a claim for contributory infringement is not defeated merely because the accused product has additional features that can be used in a non-infringing manner. What matters is whether the accused feature, not the accused product as a whole, has no substantial non-infringing uses. *See, e.g., Ricoh Company, Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (holding that one cannot "escape liability as a contributory infringer merely by embedding [the infringing component] in a larger product with some additional, separable feature before importing it and selling it"); *see also i4i Limited Partnership v. Microsoft Corp.*, 670 F.Supp.2d 568, 578 n. 5 (E.D. Tex. 2009).

Verizon argues that an induced infringement claim cannot stick because Verizon is no longer selling or supporting sold systems. Verizon Mtn at 7. However, Verizon ignores the time after the complaint was filed until it ceased offering services or support.

7

**III.   VENUE IS PROPER**

Amazon—and only Amazon—moves to dismiss for improper venue, arguing that the definition of "resides" provided by 28 U.S.C. § 1391(c) does not apply to the patent venue statute, 28 U.S.C. § 1400(b), and thus that a patent defendant is not deemed to reside for venue purposes anywhere it is subject to personal jurisdiction, but rather only in its state of incorporation.  Amazon acknowledges that the Federal Circuit held in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) that a 1988 amendment to section 1391, which added "for purposes of venue under this chapter" to the beginning of section 1391(c)), means that section 1391(c)'s definition of "resides" applies to the patent venue statute (since the patent venue statute is part of the same chapter).  But Amazon argues that a subsequent amendment in 2011 changed this, and that *VE Holdings* is thus not controlling

The problem with Amazon's argument is that the amendment that was made in 2011 ***expanded***, not ***narrowed***, the applicability of section 1391(c)'s definition of "resides."  Here is the relevant history:

> <u>1897</u>:   The first specific venue statue for patent cases was enacted.  It is currently codified at 28 U.S.C. 1400(b), and has been in its present form since 1948.
>
> <u>1957</u>:   The Supreme Court ruled in *Fourco Glass Co. v. Transmirra Prods. Corp.,* 353 U.S. 222, that section 1391(c) did not apply to section 1400(b).
>
> <u>1988</u>:   Congress amended section 1391(c) to provide that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction . . . ."
>
> <u>1990</u>:   The Federal Circuit held in *VE Holdings* that given the clear language of the 1988 amendment to 1391(c), its definition of "resides" applies to section 1400(b) because section 1400(b) is part of the same chapter that includes section 1391.
>
> <u>2011</u>:   Congress again amended section 1391(c), this time replacing "[f]or purposes of venue under this chapter" with "[f]or all venue purposes."  The House Report explains that under the amendment, "1391(c) would apply to all venue

8

statutes, including venue provisions that appear elsewhere in the United States Code."). H.R. Rep. No. 112-10, at 20 (2011).

Amazon's argument that *VE Holdings* is not controlling based on the 2011 amendment does not work in view of this history. The amended language that Amazon relies on does not even come close to narrowing the grounds for venue in a patent case. In fact, it does exactly the opposite. Before the 2011 Amendment, §1391(c) provided that its definition of "resides" applied "for purposes of venue *under this chapter*." Precisely because Congress had in 1988 *expanded* the applicability of section 1391(c)'s definition of "resides" to include the entire chapter containing section 1391(c) (which also includes section 1400(b)), the Federal Circuit held in *VE Holdings* that section 1391(c)'s definition of "resides" for venue applies in patent cases, regardless of the Supreme Court's earlier decision in *Fourco*. The 2011 Amendment then *expanded* the applicability of the definition even further, making it apply "[f]or *all* venue purposes," not just those venue provisions that were contained in the same chapter. So the holding and logic of *VE Holdings* has even more force in the context of the 2011 Amendment than it does in the context of the 1988 amendment.

In an attempt to make its argument work, Amazon completely mischaracterizes the 2011 amendment. Here is Amazon's description of the 2011 amendment:

> In 2011, Congress amended Section 1391 to remove the "[f]or purposes of venue under this chapter" language, specifying instead that the Section applies "[e]xcept as otherwise provide by law." As a result, Section 1391(a) now reads: "Except as otherwise provide by law—(1) this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. 1391(a) (emphasis added). Thus, Congress has definitively eliminated *VE Holding's* basis for treating Sections 1391 and 1400 as complementary.

Amazon MTD at 10. This is plainly wrong. Congress did not replace the "for purpose of venue under this chapter" language with the "except as otherwise provided by law" language. Rather, Congress replaced the "for purposes of venue under this chapter" language of section 1391(c)

9

with "for all venue purposes," clearly expanding the applicability of the definition of "resides" under section 1391(c).  Amazingly, the words "for all venue purposes" that were added to section 1391(c) by the 2011 amendment, and that are really what replaced the "for purposes of venue under this chapter" language that previously was part of section 1391(c), do not appear anywhere in Amazon's brief.  Amazon simply pretends that they do not exist.

 The "except as otherwise provided by law" language on which Amazon relies does appear in section 1391 as amended in 2011.  But it appears in a new subsection (a), which states that "except as otherwise provided by law" section 1391 governs venue for all civil actions.  This provision does not help Amazon's argument.  It makes clear that section 1391 is meant to apply to all civil actions absent something to the contrary elsewhere.  Section 1391(c) then provides a definition of "resides" that applies "*for all venue purposes.*"  Section 1400(b) says nothing that is inconsistent with that definition or that suggest in any way that the definition of "resides" provided by section 1391(c) is not meant to apply.  So there is nothing that is "otherwise provided by" section 1400(b) that would bar (or be in any way inconsistent with) application of the definition of "resides" included in section 1391(c).

 Every district court that has considered the effect of the 2011 amendment on section 1391(c)'s applicability to section 1400(b) has thus concluded that section 1391(c)'s definition of "resides" continues to apply for purposes of venue in patent actions.  *See TNR Indus. Doors, Inc. v. PerforMax Grp*., LLC, No. 13-13815, 2014 WL 2800750, *3 n. 3 (E.D. Mich. June 17, 2014) ("the scope of § 1391(c) as amended is *even broader* than the previous version interpreted in *VE Holding Corp.,* and this Court's conclusion that § 1391(c) supplements § 1400(b) is consistent with the holding in *VE Holding Corp.* as well as the plain language of § 1391(c)") (emphasis added); *MLP Tech., Inc. v. LifeMed ID, Inc*., No. 5:13-cv-909, 2013 WL 6243943, *2 n. 1 (N.D.

Ohio Dec. 3, 2013) ("The 2011 amendment restructured section (c) but did not alter the substance of the statute and, therefore, the Court's analysis does not change."); *Devicor Med. Products, Inc. v. Biopy Scis.*, LLC, No. 10-cv-1060, 2013 WL 486638, *3 n. 7 (D. Del. Feb. 7, 2013) (the court recognizes that a 2011 amendment to § 1391(c) changed the language . . . . The court, however, does not believe this amendment undermines the Federal Circuit's conclusion that a business entity defendant, for the purposes of § 1400(b) resides in any judicial district in which it is subject to personal jurisdiction."). Amazon knows about these decisions (they were pointed out to Amazon in other actions where Amazon has raised the same argument), but Amazon simply ignores them in its opening brief.

Amazon's final argument is that *VE Holdings* was wrong. Amazon Mtn. at 10. Of course, even if *VE Holdings* were wrong, this Court would still be required to follow it. But it is right. *VE Holdings* is solid in its analysis of the plain language of the 1988 amendment, a point that Amazon does not even try to refute. Amazon instead argues that 1391(c) should have been ignored no matter what it said because the Supreme Court has "consistently" and "unambiguously" ruled that section 1400(b) must always be considered in isolation and that it can never be supplemented by any other section. Amazon Mtn. at 5-6, 10. But that is not true. The Supreme Court has actually held that it is possible for general provisions contained in section 1391 to "supplement" section 1400(b), despite some of the broad language in cases like *Fourco* on which Amazon relies. *See Brunette Mach. Works, Ltd. v. Kockum Indus.,* 406 U.S. 706 (1972) (holding that sections 1391(d)'s provisions governing suits against aliens supplements section 1400(b) despite its earlier ruling in *Fourco*). Not only does Amazon fail to acknowledge the holding of *Brunette*, Amazon includes *Brunette* in a long string cite of cases as support for its argument that the Supreme Court's has "unambiguously" and "consistently" ruled

that 1400(b) must be interpreted in total isolation. Amazon Mtn. at 6.  That is bad enough.  But it is even worse because the Federal Circuit specifically relied on the actual holding of *Brunette* in reaching its decision in *VE Holdings*. 917 F.2d at 1579.

## IV.     SCRIPT SHOULD NOT BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT

Amazon and Best Buy alternatively ask that Script be required to provide a more definite statement.  That request should be denied for the same reasons described above.  That request should also be denied because the Patent Local Rules (as well as other discovery vehicles) provide specific procedures for defendants to seek additional information.

## V.     NO DISMISSAL SHOULD BE WITH PREJUDICE

To the extent that the Court rules that any of Script's claims are not adequately pleaded, Script requests an opportunity to amend its complaints to address any deficiencies that the Court finds.  "The court should freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a).  "[T]he Rule 'evinces a bias in favor of granting leave to amend.'"  *Potter v. Bexar County Hosp. Dist.*, 195 Fed. App'x 205, 208 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (1981)).  "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."  *Potter v. Bexar County Hosp. Dist.*, 195 Fed. App'x. 205, 208 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (1981)).

## VI. CONCLUSION

For the foregoing reasons, the Court should deny each of the motions to dismiss filed by defendants. But if the Court grants any of the motions, any dismissal should be without prejudice and with leave to amend.

Dated: September 4, 2015					Respectfully submitted,

*/s Califf T. Cooper*
Matthew J. Antonelli (lead attorney)
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Califf T. Cooper
califf@ahtlawfirm.com
Texas Bar No. 24055345
ANTONELLI, HARRINGTON &
THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

*Attorneys for Script Security Solutions L.L.C.*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 4th day of September 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

            */s/ Califf T. Cooper*
            Califf T. Cooper