# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SCRIPT SECURITY SOLUTIONS L.L.C., § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> AMAZON.COM, INC. and AMAZON.COM, § <br> LLC, § <br> § <br> *Defendants*. § | Case No. 2:15-CV-1030-WCB <br> (Lead Case) |

## **CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER**

On June 23, 2016, the Court held a hearing to address the proper construction of the disputed terms of the three patents at issue in this case, U.S. Patent Nos. 6,542,078 ("the '078 patent"), 6,828,909 ("the '909 patent"), and 7,113, 091 ("the '091 patent"). After considering the arguments made by the parties at the hearing and in their claim construction briefing (Dkt. Nos. 134, 137, and 138), the Court issues this order setting forth the Court's construction of the claim terms identified by the parties.

All three patents are entitled "Portable Motion Detector and Alarm System and Method." The patents are directed to security systems for detecting the movement of an object and actuating an alarm in response to the detected movement.

The '078 patent discloses and claims systems in which motion detectors sense the movement of an object, such as a door or window, and wirelessly transmit an alarm signal to an information-gathering device. The information-gathering device gathers information relating to the movement of the object and transmits that information to a remote device, which in turn

provides the information to a remote host.  In the asserted dependent claims, the '078 patent recites that the information-gathering device can include a camera aimed at the object (claims 2 and 3); that the remote device communicates the information to a local computer to which the remote device is electronically connected (claim 8); and that the information conveyed includes image information and/or audio information (claim 10).

The '909 patent is a continuation-in-part of the '078 patent.  The specification of the '909 patent largely tracks the specification of the '078 patent, but it adds six new figures and six and one-half columns of new matter.  The '909 patent claims a system that can identify the particular detector that triggered the motion detector alarm.  It also claims a system that provides a unique identifier associated with each motion sensor, wirelessly transmits that unique identifier information, and visually or audibly outputs that information.

The '091 patent is not a part of the '078 and '909 patent family.  The specification of the '091 patent largely tracks that of the '909 patent, but adds 32 new figures and 20 columns of new matter.  The '091 patent claims a security network in which the computer host is programmed to respond to security alerts from one or more portable security alarm systems and to provide information to the portable security alarm systems, including advertising information, other commercial information, or security alert notifications from a governmental agency.

### A. Agreed-Upon Claim Constructions

The parties have agreed on the construction of several terms in the patent claims.  The terms on which the parties have agreed are as follows:

#### 1. "remote host ('078 patent, all claims)

The parties agree that this term should be construed to mean "a server at a remote location."

> **2. "detector adapted to detect movement of said object and provide an indication of said movement" ('078 patent, claim 1)**

The parties agree that this phrase needs no construction.

> **3. "remote notification device adapted to receive said information from said information gathering device, to establish data communication with a remote host, and to provide said information to said remote host" ('078 patent, claim 1)**

The parties agree that this limitation is in "means-plus-function" form and thus is subject to the restrictions of 35 U.S.C. § 112(6).[1] They agree that the recited function is "to receive said information from said information-gathering device, to establish data communication with a remote host, and to provide said information to said remote host." They agree that the structure corresponding to the recited function is "a power supply, receiver, memory, and network interface."

> **4. "remote network host" ('078 patent, claim 6)**

The parties agree that this term should be construed to mean "a server at a remote location."

> **5. "unique identifier" ('909 patent, claims 1, 3, 12, 13, and 19)**

The parties agree that this term should be construed to mean "a number or code that uniquely identifies components of a system," and that the term "does not necessarily require that the identifier be unique relative to all other motion sensing and transmitting means owned by all subscribers."

---

[1] Paragraph 6 of section 112 was replaced by the newly designated section 112(f) when the America Invents Act, Pub. L. No. 112-29, took effect on September 16, 2012. The new statute applies only to patents that issued after that date. Because the patents in this case all issued before that date, section 112(6) is applicable to this case.

**6. "communication interface" ('909 patent, claims 11 and 19)**

The parties agree that this term needs no construction.

**7. "programming means for receiving and storing said object identification information in association with said unique identifiers at said receiver to provide a local programming function" ('909 patent, claim 13)**

The parties agree that this limitation is in means-plus-function form. They agree that the recited function is "receiving and storing object identification information in association with unique identifiers at a receiver to provide a local programming function." They agree that the structure corresponding to the recited function is "a data entry interface and a programmable processor, for performing the algorithm shown in Figure 18 and at column 15, lines 19-44, of the '909 patent."

**8. "commercial information" ('091 patent, claim 2)**

The parties agree that this term should be construed to mean "advertising, promotional offers, or other information about the sale of goods or services."

**9. "a computer host . . . being further programmed to provide information ('091 patent, claim 2)**

The parties agree that this phrase needs no construction.

The Court accepts the parties' agreed-upon constructions of each of the above terms, phrases, or limitations.

### B. Disputed Limitations from the '078 Patent

#### 1. "detecting the movement of an object" (claim 1)

The phrase "detecting the movement of an object" appears in the preamble of claim 1 of the '078 patent. Script argues that the preamble language is not limiting and, accordingly, that no construction of that phrase in the preamble is necessary. The defendants argue that the preamble is limiting or, in the alternative, that the corresponding phrase "to detect movement of said object," which appears in the body of the claim, should be defined to mean "sensing the motion relative to any variable initial position of an object."

The Court is persuaded that the phrase in the preamble of claim 1 is not limiting, but instead merely describes the general purpose of the invention, which is defined in the rest of the claim. A preamble that adds nothing of substance to the claim, but simply summarizes the limitations of the claim that follow the term "comprising," as in this case, is not treated as limiting. See Am. Med. Sys., Inc. v. Biolitec, Inc., 618 F.3d 1354, 1358-59 (Fed. Cir. 2010) ("if the preamble 'is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a [prior art] rejection), we do not construe it to be a separate limitation."), quoting Symantec Corp. v. Computer Assocs. Int'l, Inc., 522 F.3d 1279, 1288-89 (Fed. Cir. 2008). The reference in the preamble to "detecting the movement of an object" is incorporated in the limitation in the body of the claim that recites "a detector adapted to detect movement of said object." It is that limitation, and not the similar language in the preamble, that requires construction. Therefore, the Court concludes that **the term is not limiting.**

With regard to the meaning of the limitation "a detector adapted to detect movement of said object," it is clear to the Court that the term "object," as used in the claim, refers to a

moveable object, such as a door, a window, or a baby gate. The term "detector" refers to any device that detects movement of the object.

The key question in dispute with regard to this limitation is whether the claim language requires the detector to detect the movement of the object from any variable initial position (as the defendants claim), or whether the claim language is satisfied if the detector is capable of detecting movement only from a fixed initial position, as in detecting the opening of a closed window or door (as Script asserts).

Script relies on the plain language of the claim. It points out that the claim language simply requires that the detector be able to detect "movement of said object," not that the detector be able to detect movement of any kind or from any particular position.

The defendants, on the other hand, rely on several passages from the '078 specification, arguing that those passages indicate that the claim should be construed to require movement from any variable initial position. In particular, the defendants note that the specification recites that "[t]he invention relates generally to an improved motion detector and alarm system . . . which is easy to install and operate and <u>is capable of detecting motion relative to a variety of predetermined positions</u>." '078 patent, col. 1, ll. 20-25 (emphasis added).

The defendants also point out that the '078 specification discusses a prior art patent to Murphy that disclosed a portable alarm system in which the alarm was triggered by a switch that would close when an object such as a door was opened in either the inward or outward direction. Following the discussion of the Murphy reference, the specification states that "[a] need remains for a motion detection and signal generating system which is small in size, easily transportable, easy to install and <u>which can sense motion relative to any desired initial position of an object</u>." <u>Id.</u>, col. 2, ll. 14-17 (emphasis added).

Finally, the defendants rely on a portion of the specification that states: "The object whose movement is to be detected need not be in any particular position when the end of retractable wire 22 is affixed thereto. If the object is a window, such as depicted at 25, the window may be closed, or it may be partially or fully open, when retractable wire 22 is affixed. Any displacement from its position when retractable wire 22 is affixed will be detected and alarmed." Id., col. 4, line 64, to col. 5, line 3. Those passages, the defendants argue, show that the alarm system must detect not just movement by an object, such as a window or door, from a closed position to an open position, but movement from any selected starting position, such as movement of a door or window from a partly open position to an even more open position.

As Script points out, the claim language simply refers to a detector "adapted to detect movement of said object," and therefore does not itself require that the claimed alarm system must be capable of detecting movement from any selected starting position. The Court is not persuaded that the passages from the specification on which the defendants rely are sufficient to require that the claim language be construed in the restrictive manner proposed by the defendants.

It is true that the specification states that the "invention relates generally" to a portable motion detector with several features, including the capability of "detecting motion relative to a variety of predetermined positions," '078 patent, col. 1, ll. 20-25, and that it identifies a need for a motion detection system that, inter alia, "can sense motion relative to any desired initial position of an object," id., col. 2, ll. 16-17. But that does not mean that all the claims of the '078 patent require such a capacity. Claim 1, the most general claim, merely requires that the detector be adapted "to detect movement of said object." Other independent claims of the '078 patent are more specific with respect to the mechanism of motion detection. Claim 11, for example,

specifically calls for the use of "moveable magnet means coupled to said object such that movement of said object results in movement of said movable magnet means, [and] means for detecting movement of said movable magnet means." That structure suggests a system capable of detecting movement from a variety of initial positions, depending on where the movable magnets are placed.

While the use of terminology such as "the present invention includes," "the present invention is," and "all embodiments of the present invention are" have been held to constitute narrowing disavowals of broad claim scope when such terminology is used in the specification, see Luminara Worldwide, LLC v. Liown Elecs. Co., 814 F.3d 1343, 1353 (Fed. Cir. 2016), the words "the present invention relates to" have not been read in that manner. In fact, the Federal Circuit recently held that the phrase "the present invention relates to" did not rise to the level of manifest exclusion or restriction of claim scope. Unwired Planet, LLC v. Apple, Inc., No. 2015-1725 (Fed. Cir. July 22, 2016), slip op. 8-9. A fortiori, the even looser language used in the specification of the '078 patent ("the invention relates generally to") cannot be treated as disclaiming the broader claim scope suggested by the plain language of the claim.

The other portion of the specification on which the defendants rely, the description of the "retractable wire" embodiment depicted in Fig. 1 of the patent, is just that: the description of a preferred embodiment. The preferred embodiment, involving the use of a retractable wire, could detect movement from a variety of initial positions, because the object "whose movement is to be detected need not be in any particular position when the end of retractable wire 22 is affixed thereto." '078 patent, col. 4, ll. 64-66. Any displacement from the original position will result in the retractable wire being moved and the magnet sensors signaling a displacement of the object. Id., col. 5, ll. 1-3.

The portions of the specification on which the defendants rely thus characterize some of the advantages of some of the embodiments of the invention of the '078 patent. Those advantages are reflected in language used in some of the claims. But nothing in the specification establishes that detecting motion from a "variable initial position" is a necessary feature of all of the claims of the patent, including claim 1, the most general claim. The Court therefore rejects the defendants' argument that the phrases "detecting the movement of an object" and "a detector adapted to detect movement of said object" require that the detector be capable of "sensing the motion relative to any variable initial position of an object." For that reason, the Court concludes that **no construction is necessary for the "detecting the movement of an object" limitation**.

### 2. "information gathering device adapted to receive said predetermined signal, to gather information relating to said movement, and to transmit said information" (claim 1)

This limitation appears in the body of claim 1, following the limitations reciting (1) a detector that detects movement and provides an indication of that movement, and (2) a transmitter that transmits a predetermined signal in response to that indication. The recited information-gathering device receives the signal, gathers information relating to the detected movement, and then transmits the information to a remote notification device, so as to provide that information to the remote host.

The parties agree that the "information gathering device" limitation is a means-plus-function limitation. They further agree that the recited function is "to receive said predetermined signal, to gather information, relating to said movement, and to transmit said information." With respect to the structure corresponding to the recited function, Script argues that the structure is "an RF receiver, a camera and/or microphone, RF transmitter, and a power supply." The

defendants argue that the structure corresponding to the recited function is "an RF receiver, a camera, RF transmitter, and a power supply within a single device."

The Court rejects the defendants' construction, which suggests that an RF receiver, a camera, an RF transmitter, and a power supply must all be present and that they must all reside within a single device. Nothing in the specification suggests that the structure corresponding to the recited function must include all of those components. Both the specification and the claims make clear that a camera is optional, as is the microphone. Moreover, the defendants' suggestion that all of the components must be present "within a single device" might be misunderstood as suggesting that all of those components must be found within a single physical unit, as in a single discrete component within the system. While the claim language refers to an information-gathering "device," the Court does not understand the use of the term "device" in that context to require that a discrete physical unit harbor all of the mechanisms that perform the recited function. The Court concludes that the claim language should be construed to refer to a "**device consisting of an RF receiver, an RF transmitter, and a power supply, and which may also include a camera and/or a microphone, which performs the function of receiving the predetermined signal, gathering information relating to the detected movement, and transmitting that information.**"

### 3. "local computer" (claim 8)

Dependent claim 8 recites that the remote notification device within the system "communicates said information to a local computer to which said remote notification device is connected."

Script argues that the term "local computer," as used in claim 8, should be construed to mean "a computer that resides near the location from which information is retrieved." The

defendants argue that this term should be construed to mean "a computer that is located within the premises at which the object is located."

The Court concludes that there is no express or implied restriction in the claim language that would require the computer to be housed within the same physical premises as the remote notification device to which it is connected. However, the use of the term "local" indicates that the "local computer" is not located at a great distance from the remote notification device. Moreover, the claim language makes it clear that it is not enough for the local computer simply to be electronically connected to the remote notification device. That is because the claim language separately requires such an electronic connection; the use of the term "local" must add something, which in this case is a degree of propinquity. Accordingly, the Court construes the term "local computer" to mean a **"computer that resides near the remote notification device**."

**C. Disputed Limitations from the '909 Patent**

**1. "a portable security alarm system for detecting the movement of an object and providing information relative to said movement (claims 1 and 19)**

The above-quoted language is from the preambles of independent claims 1 and 19 of the '909 patent. Script argues that the preamble language is not limiting, and that the claims of the '909 patent are not constrained by the preamble language. Alternatively, Script argues that the words "detecting the movement of an object" should be given their plain and ordinary meaning. The defendants argue that the preamble is limiting and that the term "portable," in particular, limits the scope of the claims of the '909 patent.

### a. "detecting the movement of an object"

The parties' arguments regarding the "detecting the movement of an object" limitation are the same as their arguments regarding the "detecting the movement of an object" limitation in claim 1 of the '078 patent. As was the case with regard to that limitation, Script argues that the phrase is not limiting and therefore does not need to be construed. The defendants argue that the phrase is limiting and that detecting the movement of an object means "sensing the motion relative to any variable initial position of an object." For the same reasons given in part B1, above, the Court concludes that **no construction is necessary for the "detecting the movement of an object" limitation.**

### b. "portable security alarm system"

With respect to the term "portable," Script first argues that the preamble language containing that term is not limiting and that portability is not a requirement of the claims of the '909 patent. The defendants argue that the preamble is limiting and that all of the claims of the '909 patent require the security alarm systems to be portable.

The Court concludes that the term "portable security alarm system" in the preamble limits the scope of independent claims 1 and 19 of the '909 patent. Portability is a theme that runs throughout the'909 patent, and the requirement of portability is found in each of the independent claims of that patent.

To begin with, the title of the '909 patent refers to the motion detector as "portable." The Abstract of the '909 patent also refers to the system as "portable." And the '909 specification repeatedly emphasizes the portability of the system.

From the outset, the specification touts the motion detector and alarm system as "portable" and "easy to install." '909 patent, col. 1, ll. 23-24. The specification criticizes prior

art sensors as "not easily relocated." Id. at col. 1, line 54. The specification then explains that "a need remains" for a motion detector and signal generating system that is "small in size, easily transportable, [and] easy to install." Id. at col. 2, ll. 12-14.

The specification further provides that it is an object of the invention "to provide a movement detector and alarm system that is portable and is easily packed into a suitcase and transported with a traveler to be later installed on motel or hotel room doors, windows and/or any objects within the room, whenever additional protection is desired by the traveler." '909 patent, col. 3, ll. 7-12. The specification adds that the portable security alarm system "can be installed on a temporary basis and removed from an object whose movement is to be detected." Id. at col. 3, ll. 35-37.

In addressing the "portability aspect" of the invention, the specification explains that the rear panel of the motion detector has "pressure-sensitive adhesive strips," which can be "pressed into firm engagement with a window sill or doorjam" and which "will leave no marks when removed." Id. at col. 9, ll. 47-53. The adhesive strips are designed to facilitate easy removal of the device "so that it can be transported to another location." Id. at col. 10, ll. 6-7. Finally, the specification states that the system "can be carried in a brief case, a purse or overnight case from place to pace." Id. at col. 10, ll. 60-62. The total weight of a preferred embodiment, according to the specification, is approximately 20 ounces, "and it has a volume which occupies a very small portion of a brief case, suitably sized purse or a suitcase." Id. at col. 10, ll. 63-66.

In responding to the evidence regarding the portability feature, Script relies on a line of cases holding that ordinarily the preamble of a claim is not limiting unless the preamble recites essential structure or steps, or is necessary to give life, meaning and vitality to the claim. See,

e.g., Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002). Those cases, however, do not help Script.

As the Federal Circuit explained in Catalina Marketing, when the preamble recites "additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation." Id. That is the case with respect to the portability requirement set forth in the preamble of claims 1 and 19 of the '909 patent. The specification makes clear that portability is a critical element of the invention, and it is evident that the patentees simply used the preamble as the vehicle for incorporating that requirement into the claims.[2]

In light of all the evidence regarding portability, the Court concludes that **the reference to "portable security alarm system" in the preamble of each of the independent claims of the '909 patent is limiting**.

In the alternative, Script argues that if the claims of the '909 patent are construed to require that the alarm system be portable, the term "portable" should be defined to mean "[a] removable alarm system for security that is physically configured to be easily carried by an individual." The defendants argue that the term "portable" should be construed to mean "[a] removable alarm system for security that is physically configured to be easily removable for transportation for use at another location and capable of being carried by an individual."

The difference between the two proposed constructions is not great; the defendants' version just adds the requirement that the system be "easily removable for transportation for use

---

[2] At oral argument on claim construction, counsel for Script acknowledged that the preamble of claim 19 of the '909 patent provides the antecedent basis for the term "said portable security alarm system," which appears in the body of the claim. That is further evidence that, at least for that claim, the preamble should be regarded as limiting. As the Federal Circuit explained in Catalina Marketing, "dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and the claim body to define the invention." Catalina Marketing, 289 F.3d at 808.

at another location." Script objects that the defendants' proposed construction goes beyond the ordinary meaning of the term "portable."

The Court concludes that the defendants' definition of the term "portable" is more consistent with the way the term is used in the '909 patent. The specification makes it clear that the system is easily removable so that it can be transported to a different location, and that it can be easily carried by an individual in a briefcase or purse.

In particular, as explained above, the specification repeatedly touts the ability of a user of the invention to readily and repeatedly install and remove the motion detection device for use and reuse, for example, in hotel rooms. Ease of installation, removal, and transportation are themes repeated throughout the specification. Script's definition would fit a device that is small enough to be carried prior to installation (e.g., in a box from the store), but is designed to be installed permanently in a single location and would be difficult to remove or reuse elsewhere. The context in which the term "portable" is used in the patent thus supports the defendants' proposed instruction, not Script's. See Eon Corp. IP Holdings LLC v. Silver Spring Networks, 815 F.3d 1314, 1320-22 (Fed. Cir. 2016) (construing the terms "portable" and "mobile"). Accordingly, the Court concludes that the term "portable security alarm system" should be construed to mean a **"removable alarm system for security that is physically configured to be easily installed, easily removed, and easily transported for use at another location, and capable of being easily carried by an individual."**

### 2. "interactive response medium (claims 20-21)

The term "interactive response medium" is used in dependent claim 20 of the '909 patent and, by extension, in dependent claims 21-23. Claim 20 depends from claim 19, and claims 21-23 depend from claim 20. Claim 19 recites a portable security alarm system similar to the

systems recited in claims 1 and 15.  Claim 19 adds a remote security administration system comprising a computer host, a communication interface, and a data storage resource, in which the computer host is programmed to execute a security alert system automatically, contacting and providing security information to a location designated by the subscriber.  Claim 20 adds that the location includes an "interactive response medium."

Script argues that this term means "a communication media such as telephone, IRC, or email."  The defendants argue that the term should be given its plain and ordinary meaning and therefore does not require construction.

In the discussion of the conveyance of security information to a location designated by the subscriber, the specification refers to the location being, for example, "a voice telephone number, a facsimile telephone number, an email address, an IRC (Internet Relay Chat) address, or otherwise."  '909 patent, col. 17, ll. 25-27; see also id. at col. 17, ll. 41-43, 54-60.

The Court is concerned that a jury might not understand the term "interactive response medium" without some definitional assistance.  Because Script's proposed definition accords with the specification's discussion of that limitation, the Court will adopt Script's proposed construction, but will spell out the meaning of IRC.  Accordingly, the Court construes the term "interactive response medium" to mean a **"communication medium such as telephone, Internet Relay Chat, or email."**

**D.  Disputed Limitations from the '091 Patent**

    **1.  "portable security alarm system" (claim 2)**

Claim 2 of the '091 patent begins by reciting "[a] security network comprising a security administration system and at least one portable security alarm system."  The parties' arguments regarding the meaning of the "portable security alarm system" limitation in claim 2 of the '091

patent are the same as their arguments regarding the "portable security alarm system" limitation in claims 1 and 19 of the '909 patent. Script argues that this term should be construed to mean "a removable alarm system for security that is physically configured to be easily carried by an individual." The defendants argue that the term should be construed to mean "a removable alarm system for security that is physically configured to be easily removable for transportation for use at another location and capable of being carried by an individual." For the reasons given in part C1.b, above, the Court construes this limitation to mean a "**removable alarm system that is physically configured to be easily installed, easily removed, and easily transported for use at another location, and capable of being easily carried by an individual**."

      **2. "wireless movement detecting and signal transmitting means for transmitting security information" (claim 2)**

Claim 2 of the '091 patent further recites that the claimed security network comprises at least one portable security alarm system having a wireless receiver means and one or more wireless movement detecting and signal transmitting means for transmitting security information to said receiver means." The parties agree that the phrase "wireless movement detecting and signal transmitting means for transmitting security information is in means-plus-function form. They also agree that the recited function is "detecting movement and wirelessly transmitting security information." They disagree, however, regarding the definition of the structure corresponding to the recited function.

Script argues that the structure should be defined as "magnets and a circuit that can sense shifts in magnetic fields, gyroscope sensor, accelerometer sensor, or transducer modified to be sensitive to inertial movement, integrated circuit; microcontroller; and a communication mode (such as a transmitter or transceiver)." The defendants argue that the structure should be defined

as "retractable wire, gyroscope sensor, MEMs accelerometer sensor, piezoelectric film accelerator sensor, earth's magnetic poles magnetic field sensor, or piezoelectric inertial sensor, and transmitter."

The specification of the '091 patent contains a lengthy discussion of the various types of sensors that can be used with the claimed security network. The sensors discussed in the specification are: the retractable wire used in connection with magnets to detect the movement of the wire, e.g., '091 patent, col. 5, line 10, through col. 11, line 21, and col. 21, ll. 47-59; a gyroscope sensor, id. at col. 21, line 62, through col. 24, line 3; an accelerometer, either a micro-electrical-mechanical systems sensor, id. at col. 24, ll. 4-42, or a piezoelectric film accelerometer, id. at col. 24, ll. 43-60; a piezoelectric audio transducer, id. at col. 24, line 61, through col. 26, line 37; a piezoelectric inertial sensor, id. at col. 38, line 35, through col. 40, line 43; a magnetic field sensor, id. at col. 40, line 58, through col. 41, line 33; and a combination of a magnetic field sensor with an inertial sensor (either a gyroscope sensor or an accelerometer sensor), id. at col. 41, ll. 34-46.

The difference between Script's proposed construction and the defendants' proposed construction is in their relative specificity: Script's proposed construction is more general, while the defendants' is more specific. Based on the language of the specification, the Court concludes that Script's construction is somewhat too general, and that the defendants' construction, with a slight modification, more accurately depicts the structure set forth in the specification corresponding to the function recited in the claim. Accordingly, the Court construes the structure corresponding to the function set forth in the "wireless movement detecting and signal transmitting means" limitation to be a **"system using one or more of the following devices to detect motion: a retractable wire and magnets; a gyroscope sensor, an accelerometer—**

**either a micro-electrical-mechanical systems sensor or a piezoelectric film accelerator—or a combination of a magnetic field sensor with a type of inertial sensor—either a gyroscope sensor or an accelerometer sensor."**

\* \* \* \* \*

These constructions are subject to modification in the course of the litigation if it becomes clear to the Court that further changes or refinements in the claim constructions are needed as additional record materials come to light. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

IT IS SO ORDERED.

SIGNED this 22d day of July, 2016.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE