IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SCRIPT SECURITY SOLUTIONS L.L.C., | ) ) |
| Plaintiff, | ) Civil Action No. 2:15-cv-1030-WCB ) |
| v. | ) (CONSOLIDATED LEAD CASE) ) |
| AMAZON.COM, INC., ET AL., | ) JURY TRIAL DEMANDED ) |
| Defendant. | ) ) ) |

**OPPOSITION TO SCRIPT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY**

# TABLE OF CONTENTS

I. Introduction ........................................................................................................................... 1

II. Statement of the Issues to Be Decided by the Court ............................................................ 2

III. Response to Statement of Undisputed Material Facts .......................................................... 2

IV. Argument ............................................................................................................................. 5

   A. The Legal Standard for Public Accessibility ................................................................... 5

   B. The Record Shows the VISTA-20 Reference was Publicly Available Before the Priority Date and Is Invalidating Prior Art. .................................................................................... 6

   C. The Record Shows the SX-V Reference was Publicly Available Before the Priority Date and Is Invalidating Prior Art. ................................................................................... 11

V. Conclusion .......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Blue Calypso, LLC v. Groupon, Inc.*,
   815 F.3d 1331 (Fed. Cir. 2016)......................................................................................6

*In re Cronyn*,
   890 F.2d 1158 (Fed. Cir. 1989)......................................................................................6

*Constant v. Advanced Micro-Devices, Inc.*,
   848 F.2d 1560 (Fed. Cir. 1988)......................................................................................8

*DeLorme Publishing Co., Inc. v. BriarTek IP, Inc.*,
   60 F. Supp. 3d 652, 662–63 (E.D. Va. 2014) ......................................................6, 10, 12

*In re Enhanced Sec. Research, LLC*,
   739 F.3d 1347 (Fed. Cir. 2014)...............................................................................10, 12

*Garrett Corp. v. United States*,
   422 F.2d 874 (Ct. Cl. 1970) ........................................................................................6, 9

*In re Klopfenstein*,
   380 F.3d 1345 (Fed. Cir. 2004)...............................................................................6, 7, 11

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
   545 F.3d 1340 (Fed. Cir. 2008)...............................................................................8, 10, 11

*In re Lister*,
   583 F.3d 1307 (Fed. Cir. 2009)......................................................................................6

*MIT v. AB Fortia*,
   774 F.2d 1104 (Fed. Cir. 1985)......................................................................6, 8, 9, 11

**Statutes**

35 U.S.C. § 102(a) .............................................................................................................5

35 U.S.C. § 102(b) ..........................................................................................................5, 6

**Other Authorities**

Fed. R. Evid. 803(6)........................................................................................................10

Fed. R. Evid. 803(16)......................................................................................................11

Plaintiff Script Security Solutions LLC ("Script") has moved for partial summary judgment of validity on the ground that three documents were not publicly accessible. Because substantial evidence demonstrates these documents about certain prior art systems were publicly accessible, Defendant Protection One Alarm Monitoring, Inc. ("P1") respectfully requests that Script's Motion be denied.

**I.   INTRODUCTION**

P1 has irrefutable knowledge that the three documents Script identifies in its motion were publicly available prior to the critical date – *the same P1 managers that are providing declarations today were involved in the evaluation of these systems and review of documents about them nearly twenty years ago.* But there is more. P1's technical expert has been in the security industry for over forty years, and also independently recalls these documents about the prior art products. And finally, the documents include markings that are consistent with the recollection of the various individuals.

There are three documents that Script identifies in its motion to strike: the CareTaker Installation Manual (referred to herein as the "CareTaker Reference"), the Ademco VISTA-20 Installation Instructions (referred to herein as the "VISTA-20 Reference"), and the SX-V Owner's Manual and Installation Manual (referred to herein as the "SX-V Reference").[1] Script did not take discovery from P1 on the public availability of any of these systems or their accompanying documentation – despite knowing that the P1 was intending to rely on them at trial and that P1's expert was going to testify to the same. *See* Ex. 6, at 4 (P1's Initial Disclosures); Ex. 7 (8/4/16 email fr. A. Kazi to Z. Harrington re Sanchez testimony); Ex. 8, at 2

---

[1] Of these, only the VISTA-20 Reference and SX-V Reference remain at issue, as the CareTaker Reference was relevant only to the asserted claims of the '078 Patent, which Script is no longer asserting against P1. *See* Unopposed Motion to Dismiss Claims Related to '078 Patent, Dkt. No. 235.

(D's Prelim. Elec. Of Asserted Prior Art); Ex. 9 (Appendix B-2 to Invalidity Contentions); Ex. 10 (Appendix B-22 to Invalidity Contentions). Script cannot now contend that the record is silent.

Even though P1 believes the current record demonstrates public accessibility of the VISTA-20 Reference and the SX-V Reference, to remove any doubt, P1 submits declarations from witnesses who may testify at trial (Mr. Joseph Sanchez and Mr. Mark Jett) and P1's technical expert, Mr. Louis Fiore, regarding their personal knowledge of these two documents' public accessibility. Ex. 1 (Sanchez Declaration); Ex. 2 (Fiore Declaration). These declarations unambiguously establish the VISTA-20 Reference and the SX-V Reference were public accessibility before the relevant critical date.

## II. STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT[2]

1. Whether P1 has raised a genuine dispute of fact that the VISTA-20 Reference, which before the '909 Patent's critical date was distributed to persons skilled in the art with no restrictions on redistribution or expectations of confidentiality, was publicly accessible and is thus a prior art printed publication.

2. Whether P1 has raised a genuine dispute of fact the SX-V Reference, which before the '909 Patent's critical date was distributed to persons skilled in the art with no restrictions on redistribution or expectations of confidentiality, was publicly accessible and is thus a prior art printed publication.

## III. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The '909 Patent's application was filed on April 8, 2002, and has a 102(b) critical date of April 8, 2001. United States Patent No. 6,828,909.

---

[2] As the issue has been mooted by dismissal of Script's assertion of the '078 patent, the question of whether the CareTaker Reference is prior art is omitted.

### Ademco VISTA-20 Installation Instructions

2. The VISTA-20 Reference was publicly available before April 8, 2001. Ex. 1, ¶¶ 9-13 (Sanchez Declaration); Ex. 2, ¶¶ 9-13 (Jett Declaration); Ex. 3, ¶¶ 11-16 (Fiore Declaration).

3. Before April 8, 2001, Ademco sold VISTA-20 systems packaged with the VISTA-20 Reference. Ex. 1, ¶¶ 9-10 (Sanchez Declaration); Ex. 2, ¶¶ 9-10 (Jett Declaration); Ex. 3, ¶¶ 11-12 (Fiore Declaration).

4. Installation and distribution companies and private persons purchased the VISTA-20 system and received the VISTA-20 Reference before April 8, 2001. Ex. 1, ¶ 10 (Sanchez Declaration); Ex. 2, ¶ 10 (Jett Declaration); Ex. 3, ¶ 12 (Fiore Declaration).

5. "Thousands of individual installers working for hundreds of individual companies" had the VISTA-20 Installation Instructions before April 8, 2001. Ex. 3, ¶ 13 (Fiore Declaration).

6. Access to and subsequent distribution of the VISTA-20 Reference was not restricted. Ex. 1, ¶ 11 (Sanchez Declaration); Ex. 2, ¶ 11 (Jett Declaration); Ex. 3, ¶ 14 (Fiore Declaration).

7. The VISTA-20 Reference was available for distribution to members of the public who requested it, and was distributed at trade shows. Ex. 1, ¶ 12 (Sanchez Declaration); Ex. 3, ¶ 15 (Fiore Declaration).

8. The VISTA-20 Reference bears a copyright date of 1995. Ex. 5, at PRIOR-ART-001763 (VISTA-20 Reference).

9. The VISTA-20 Reference states on its cover: "N7526V2 11/95." Ex. 5, at PRIOR-ART-001644 (VISTA-20 Reference).

10. James McAward, a director of market research at Honeywell International Inc., testified that "N7526V2 11/95" is the document's publication date. Ex. 4, at 20:3-7 (McAward Deposition).

11. Mr. McAward further testified that, based on Ademco's business practices, the document "would be available to ship to customers within one to three months of that publication date." Ex. 4, at 20:13-15 (McAward Deposition).

12. Mr. McAward also testified that "documents were also distributed to customers who would call and ask for them. Documents would be distributed, we published CDs, gave them out at trade shows, etcetera [sic]." Ex. 4, at 34:24-35:02 (McAward Deposition).

13. Mr. McAward has personal knowledge that the VISTA-20 system was sold to the public at least before February 16, 2001, and that the VISTA-20 system was packaged with the VISTA-20 Reference. Ex. 4, at 20:16-21:8, 39:6-17, 47:2-10 (McAward Deposition).

14. The dealers who purchased security systems like the VISTA-20 resold them to their end customers. Ex. 4, at 41:6-8.

**The SX-V Owner's Manual and Installation Manual**

15. The SX-V Reference was publicly available before April 8, 2001. Ex. 1, ¶¶ 14-18 (Sanchez Declaration); Ex. 2, ¶¶ 14-18 (Jett Declaration); Ex. 3, ¶¶ 17-23 (Fiore Declaration).

16. Before April 8, 2001, Interactive Technologies, Inc. sold SX-V systems packaged with the SX-V Reference. Ex. 1, ¶¶ 14 (Sanchez Declaration); Ex. 2, ¶¶ 14 (Jett Declaration); Ex. 3, ¶¶ 17 (Fiore Declaration).

17. Installation and distribution companies and private persons purchased the SX-V system and received the SX-V Reference before April 8, 2001. Ex. 1, ¶ 15 (Sanchez Declaration); Ex. 2, ¶ 15 (Jett Declaration); Ex. 3, ¶ 18 (Fiore Declaration).

18. "Thousands of individual installers working for hundreds of individual companies" had the SX-V Reference before April 8, 2001. Ex. 3, ¶ 19 (Fiore Declaration).

19. Access to and subsequent distribution of the SX-V Reference was not restricted. Ex. 1, ¶ 16 (Sanchez Declaration); Ex. 2, ¶ 16 (Jett Declaration); Ex. 3, ¶ 20 (Fiore Declaration).

20. The SX-V Reference was available for distribution to members of the public who requested it, and was distributed at trade shows. Ex. 1, ¶ 17 (Sanchez Declaration); Ex. 3, ¶ 21 (Fiore Declaration).

21. The SX-V Reference bears copyright dates of 1989, 1990, and 1991. Ex. 11, at PRIOR-ART-002645 (SX-V Reference).

22. The SX-V Reference states on its title page: "Issue Date 5/05/93." Ex. 11, at PRIOR-ART-002645 (SX-V Reference).

## IV. ARGUMENT

Substantial evidence shows that both the VISTA-20 Reference and the SX-V reference were widely distributed to those skilled in the art before the critical date. The record also shows that there was no limitation, either through legal obligation or business norm, on further distributing these references. In light of these facts, P1 can meet its burden of proving public accessibility, and Script's Motion for Partial Summary Judgment should be denied.

### A. The Legal Standard for Public Accessibility

When the asserted patents issued, 35 U.S.C. § 102(a) provided that a patent was invalid if "the invention was . . . patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent." Section 102(b) similarly provided that a patent was invalid if "the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." A printed reference qualifies as a "printed publication" if it was "sufficiently

accessible to the public interested in the art" before the priority date. *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1348 (Fed. Cir. 2016) (quoting *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989)); *In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009). "'[P]ublic accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication' bar under 35 U.S.C. § 102(b)." *Blue Calypso*, 815 F.3d at 1348 (quoting *In re Hall*, 781 F.2d 897, 898 (Fed. Cir. 1986)). "A reference is considered publicly accessible if it was 'disseminated or otherwise made available to the extent that persons interested or ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it.'" *Id.* (quoting *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008)). While not exclusive, two main forms of "public accessibility" have emerged in the case law: distribution and indexing. *See In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004). Of these, distribution is most relevant here.

Distribution of a document without restriction on use renders it publicly accessible. *See, e.g.*, *MIT v. AB Fortia*, 774 F.2d 1104, 1109 (Fed. Cir. 1985) (holding that distribution of six copies of a document after an oral presentation before as few as 50 people made the document publicly accessible); *see also Garrett Corp. v. United States*, 422 F.2d 874, 878 (Ct. Cl. 1970) ("While distribution to government agencies and personnel alone may not constitute publication, distribution [of six copies] to commercial companies without restriction on use certainly does.") Inclusion of a printed manual with a physical product is sufficient to render the manual publicly accessible. *See, e.g.*, *DeLorme Publishing Co., Inc. v. BriarTek IP, Inc.*, 60 F. Supp. 3d 652, 662–63 (E.D. Va. 2014).

> **B. The Record Shows the VISTA-20 Reference was Publicly Available Before the Priority Date and Is Invalidating Prior Art.**

Five portions of the record show that the VISTA-20 Reference was distributed before the '909 Patent's April 8, 2001, critical date: (1) Mr. Sanchez's declaration, (2) Mr. Jett's declaration, (3) Mr. Fiore's declaration, (4) Mr. McAward's Deposition, and (5) the document itself.[3]

In Messrs. Sanchez's, Jett's, and Fiore's declarations, they provide testimony that the VISTA-20 Reference was publicly available more than a year before the priority date of the asserted claims of the '909 patent. Ex. 1, ¶¶ 9-13 (Sanchez Declaration); Ex. 2, ¶¶ 9-13 (Jett Declaration); Ex. 3, ¶¶ 11-16 (Fiore Declaration). They note that prior to the critical date, Ademco sold VISTA-20 systems packaged with the November 1995-dated VISTA-20 Reference. Ex. 1, ¶¶ 9-10 (Sanchez Declaration); Ex. 2, ¶¶ 9-10 (Jett Declaration); Ex. 3, ¶¶ 11-12 (Fiore Declaration). They also state that access to and subsequent distribution of the VISTA-20 Reference was not restricted, either by legal obligation or by professional and behavioral norms. Ex. 1, ¶ 11 (Sanchez Declaration); Ex. 2, ¶ 11 (Jett Declaration); Ex. 3, ¶ 14 (Fiore Declaration); *cf. Klopfenstein*, 380 F.3d at 1351 ("Where professional and behavioral norms entitle a party to a reasonable expectation that the information displayed will not be copied, we are more reluctant to find something a 'printed publication.'"). Rather, the VISTA-20 Reference was available for distribution to members of the public who requested it, and was even

---

[3] Mr. Sanchez and Mr. Jett are P1 employees who have been working at P1 for nearly two decades apiece. Mr. Fiore is P1's expert, and he has been working in the security industry for over forty years. P1 disclosed initially Mr. Sanchez on its initial disclosures as being knowledgeable about P1's product offerings used over time – which includes the Vista 20 and SX-V prior art. P1 served amended disclosures which additionally identified Mr. Jett for that same topic. Script deposed Mr. Jett but did not ask him about any prior art. Script was on notice that Mr. Sanchez was knowledgeable about prior art in this case, but elected not to depose him either. Ex. 7 (8/4/16 email fr. A. Kazi to Z. Harrington re Sanchez testimony). Script also knew that P1's technical expert, Mr. Fiore, has been in the security industry for over forty years and that he had personal knowledge of the prior art, but again, Script elected not to depose him.

distributed at trade shows. Ex. 1, ¶ 12 (Sanchez Declaration); Ex. 3, ¶ 15 (Fiore Declaration). Mr. Fiore states from his personal knowledge that "[t]housands of individual installers working for hundreds of individual companies would have had the VISTA-20 Reference" during the relevant time period. Ex. 3, ¶ 13 (Fiore Declaration). Such widespread distribution satisfies the requirement for public accessibility. *See Kyocera Wireless*, 545 F.3d at 1350–51 (holding that sale of 25,000 copies of a technical book rendered it publicly accessible) (Rader, J., joined by Judges Bryson and Linn). The facts in this case are far and above, for example, distribution of a document to six persons after an oral presentation. *See MIT*, 774 F.2d at 1109.

Mr. James McAward, of Honeywell (Ademco's successor), also testified that the VISTA-20 Reference was available to the public based on Ademco's business practices. *See Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988) ("Evidence of routine business practice can be sufficient to prove that a reference was made accessible before a critical date."). He testified that "the publication date of [the VISTA-20 reference] was November 1995," and that according to Ademco's customary business practices it would have been ready to ship with the VISTA-20 system "within one to three months of that publication date." Ex. 4, at 20:2-19 (McAward Deposition). He further testified that he had personal knowledge that the VISTA-20 system was sold to the public at least before February 16, 2001, and that the VISTA-20 system was packaged with the VISTA-20 Reference. *Id.* at 20:16-21:8, 39:6-17, 47:2-10. Thus, Mr. McAward confirms that the VISTA-20 Reference was distributed to the public with each VISTA-20 sold to the public.

In addition, Mr. McAward explained that it was Ademco's standard business practice to make manuals like the VISTA-20 Reference available to the public by other means. Script's counsel asked Mr. McAward whether the only way documents like the VISTA-20 Reference

were available to the public was through purchase of the systems. Mr. McAward responded: "[D]ocuments were also distributed to customers who would call and ask for them. Documents would be distributed, we published CD's, gave them out at trade shows, etcetera [sic]." *Id.* at 34:10-35:2; *see also id.* at 46:16-22. Such distribution is sufficient to show public accessibility. *See, e.g.*, *MIT*, 774 F.2d at 1109.

Script relies heavily on two statements in Mr. McAward's deposition in an attempt to make it appear that access to the VISTA-20 Reference was somehow restricted. First, Script points to Mr. McAward testimony that "user manuals for these products . . . are available to the general public through the website," and installation instructions were available through the website only to installers who registered. Motion at 4, 9. However, this statement does not contradict Mr. McAward's earlier testimony that the VISTA-20 Reference was distributed to the public. At best, it is relevant to the public accessibility of the VISTA-20 Reference through indexing—not to the distribution of the document. The record gives no indication that it was difficult to register on the website and gain access to the documents that required registration. In any case, distribution of the VISTA-20 Reference with the VISTA-20 system and as otherwise described above is sufficient to establish public accessibility.

Second, Script makes much of the fact that Mr. McAward agreed with the statement, "when you say public, you don't necessarily mean the broader public, what you mean is a customer such as ADT or another security company." Ex. 4, at 47:25-48:15 (McAward Deposition). But this testimony from Mr. McAward does nothing to contravene other testimony that the VISTA-20 Reference was publicly available, for three reasons. First, Ademco distributed the VISTA-20 Reference to "hundreds" of commercial entities without restriction. Ex. 3, ¶ 13 (Fiore Declaration); *see Garrett Corp.*, 422 F.2d at 878 ("While distribution to

OPPOSITION TO SCRIPT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT OF VALIDITY                                                                                              PAGE 9

government agencies and personnel alone may not constitute publication, distribution [of six copies] to commercial companies without restriction on use certainly does." ). Second, it is irrelevant whether the VISTA-20 Reference was distributed to "the broader public." The inquiry is whether it was distributed to "persons interested or ordinarily skilled in the subject matter"—such as, in this case, ADT or other security system dealers. *Kyocera Wireless*, 545 F.3d at 1350. The record shows that it was distributed to "thousands" of such installers. Ex.3, ¶ 13 (Fiore Declaration). Third, even if distribution to the broader public did matter, after security system dealers like ADT purchased products like the VISTA-20, they resold them to end consumers. *See* Ex. 4, at 41:6-8 (McAward Deposition).

Of course, the VISTA-20 Reference itself provides its own evidence of public availability. The VISTA-20 Reference lists a publication date of "11/95" and a copyright date of "1995." Ex. 5, at PRIOR-ART-001644 - PRIOR-ART-1763 (VISTA-20 Reference). Such evidence can support a finding of public accessibility. *See, e.g.*, *In re Enhanced Sec. Research, LLC*, 739 F.3d 1347, 1354–55 (Fed. Cir. 2014) ("In view of **the Manual's inscription date**, the Smaha Declaration, and evidence of NetStalker advertisements published in 1995, we conclude that substantial evidence supports the Board's finding that the Manual constituted publically-available prior art under § 102(a)(1)."); *DeLorme Publishing*, 60 F. Supp. 3d at 662 ("[Defendant] makes the assertion that 'there is no evidence presented that the document was publicly available.' That argument fails for several reasons. First, the manual itself bears a copyright date of 1999."). While some courts have held that copyright dates on documents are inadmissible hearsay that cannot show the date of publication, two exceptions to hearsay apply to the VISTA-20 Reference. First, the VISTA-20 manual is admissible as a business record. Fed. R. Evid. 803(6); *see* Ex. 4, at 16:17-19:9 (McAward Deposition). Second, the VISTA-20 manual

is admissible under the ancient documents exception. Fed. R. Evid. 803(16); *see* Ex. 4, at 19:21-20:7 (McAward Deposition). The publication date and copyright date are thus admissible evidence of public accessibility.

### C. The Record Shows the SX-V Reference was Publicly Available Before the Priority Date and Is Invalidating Prior Art.

Four portions of the record show that the VISTA-20 Reference was distributed before the '909 Patent's April 8, 2001, critical date: (1) Mr. Sanchez's declaration, (2), Mr. Jett's declaration, (3) Mr. Fiore's declaration, and (4) the document itself.

As with the VISTA-20 Reference, Mr. Sanchez's declaration, Mr. Jett's declaration, and Mr. Fiore's declaration demonstrate that the SX-V Reference was publicly accessible before the critical date. They directly state as much. Ex. 1, ¶¶ 14-18 (Sanchez Declaration); Ex. 2, ¶ 14-18 (Jett Declaration); Ex. 3, ¶ 17-23 (Fiore Declaration). These declarations explain that ITI sold SX-V systems before the critical date that were packaged with the May 1993-dated SX-V Reference. Ex. 1, ¶ 14 (Sanchez Declaration); Ex. 2, ¶ 14 (Jett Declaration); Ex. 3, ¶ 17 (Fiore Declaration). They also state that access to and subsequent distribution of the SX-V Reference was not restricted, either by legal obligation or by professional and behavioral norms. Ex. 1, ¶ 16 (Sanchez Declaration); Ex. 2, ¶ 16 (Jett Declaration); Ex. 3, ¶ 20 (Fiore Declaration); *cf. Klopfenstein*, 380 F.3d at 1351. Rather, the SX-V Reference was available for distribution to members of the public who requested it, and was even distributed at trade shows. Ex. 1, ¶ 17 (Sanchez Declaration); Ex. 3, ¶ 21 (Fiore Declaration). Mr. Fiore estimates that, like the VISTA-20 Reference, the SX-V Reference would have been in the hands of "[t]housands of individual installers working for hundreds of individual companies" before the critical date. Ex. 3, ¶ 19 (Fiore Declaration). As explained above, such widespread distribution satisfies the requirement for public accessibility. *See Kyocera Wireless*, 545 F.3d at 1350–51; *MIT*, 774 F.2d at 1109.

The SX-V Reference also shows that it was published long before April 8, 2001. The SX-V manual states copyright dates of 1989, 1990, and 1991, and an "Issue Date" of 5/05/93. Ex. 11, at PRIOR-ART-002645 (SX-V Reference). Such evidence can support a finding of public accessibility. *See, e.g.*, *In re Enhanced Sec. Research, LLC*, 739 F.3d 1347, 1354–55 (Fed. Cir. 2014); *DeLorme Publishing*, 60 F. Supp. 3d at 662. As with the VISTA-20 Reference, statements in the SX-V Reference are admissible over any hearsay objection as a business record or an ancient document. The publication date and copyright date are thus admissible evidence of public accessibility.

## V. CONCLUSION

For the foregoing reasons, P1 respectfully requests that Script's Motion for Partial Summary Judgment on Validity be denied in its entirety.

Dated: October 11, 2016                                   Respectfully submitted,

                                                          FISH & RICHARDSON P.C.


                                                          By: */s/ Bret T. Winterle*
                                                              Neil J. McNabnay
                                                              Texas Bar No. 24002583
                                                              mcnabnay@fr.com
                                                              Bret T. Winterle
                                                              Texas Bar No. 24084249
                                                              winterle@fr.com
                                                              Matthew A. Colvin
                                                              Texas Bar No. 24087331
                                                              colvin@fr.com
                                                              FISH & RICHARDSON P.C.
                                                              1717 Main Street, Suite 5000
                                                              Dallas, TX 75201
                                                              (214) 747-5070 - Telephone
                                                              (214) 747-2091 – Facsimile

                                                              Aamir A. Kazi
                                                              Georgia Bar No. 104235
                                                              kazi@fr.com
                                                              FISH & RICHARDSON P.C.
                                                              1180 Peachtree Street, 21st Floor
                                                              Atlanta, GA 30309
                                                              (404) 892-5005 – Telephone
                                                              (404) 892-5002 - Facsimile

                                                              **COUNSEL FOR DEFENDANT
                                                              PROTECTION ONE ALARM
                                                              MONITORING, INC.**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 11, 2016, to all counsel of record via e-mail.


                                                          */s/ Bret T. Winterle*
                                                          Bret T. Winterle